Here is Lee v. Town of Seaboard and whenever Mr. Doggett is ready, we'll hear from him. Good morning, Judge Niemeyer, Judge King, and Judge Wynn. May it please the Court, my name is Eric Doggett and I represent Mr. Brian Lee, the appellant in this case, and I'm with the North Carolina Bar. On May 15, 2010, Officer Phillips, a police officer employed by the Town of Seaboard, shot my client, Mr. Lee, by firing two shots in quick succession into the side of a car driven by Mr. Lee as he carried two passengers and was fleeing an attacking mob. Now this is an unusual police shooting case because after the shooting, unknown to my client at the time, the officer had applied for and was discharged in bankruptcy in Chapter 7, and there was a permanent bankruptcy injunction which included this chosen action. This is a case against the Town of Seaboard, and in this case, the Town of Seaboard has withdrawn its sovereign or slash governmental immunity defense. So there is no such defense in this case. To the extent of insurance? No, Your Honor, they've withdrawn. That's an affirmative defense. They've withdrawn their defense. So it would be to extend the insurance, but in this case, they have to assert a defense. And it's my understanding of the law once you don't assert it, you don't have it. And by withdrawing it, they don't have it now. North Carolina doesn't have a provision that if the town provides insurance that they waive sovereign immunity to the extent of insurance. I know in Maryland that states. Judge Niemeyer, yes they do. They do have that provision. However, it is an affirmative defense that has to be given. I understand. And nobody disputes what you're saying, apparently. But Judge Wynn's question really was it's this mechanism that the town waives to the extent of the insurance. Yes, that's a statutory provision. And so this is an unusual case from that perspective. In addition, although it's a police shooting case, there have been 1983 claims against the officer. So there's no high hurdle of qualified immunity. It's not there. There's no claims at all made against the officer in his individual capacity. I think the district court, just to get to the rub of the thing, the district court concluded that the shooting and the engagement were all such quick moving and that the officer acted reasonably under 15A section 402D to preserve his own life and the life of others in the fast-moving circumstances. It's disputed the officer said he was hit by the car. Other evidence suggests he may not have been. But it was fast-moving. It's undisputed the car was coming at the officer off the road. He fired these two shots all at the same time. And it's hard to conclude that that isn't so in this record because I don't think the two accounts by your client and the officer disagree. Your client just had some limited capacity. He didn't hear the stop, stop. And he had this cracked windshield which looked like, if you look in the pictures, it's just a checkerboard. Well, it's not broken. It's in the front windshield but it's all broken up and you can't see through it. So he's driving off the road in the direction of the officer and the officer is worried about being run down. He can't see where he's going. He didn't see the officer or hear the officer or hear any crowd. And the officer says, well, he hit me and he's coming right at me, which they don't disagree. And he fires these two shots. And that is really sort of the whole story, isn't it? Well, your honor, there are some disputed, some genuine issues that are disputed. In terms of our review, summary judgment, the light most favorable to the plaintiff. And if you can take Judge Demeyer's statement as he just gave it to you and point to disputed facts that would preclude summary judgment, then perhaps your case would be stronger. Okay, so let's look at the facts known to the officers at the scene. The first was... Is that the statement? Do you not need the facts in the light most favorable to the... Yes, your honor. In your perspective? Yes. In this case, my client complied with the officer's order to leave the scene because they were concerned of his safety, serious concerns. How were they breaking out those windows? What kind of, tire tools or what were they hitting? Well, the officer Twine testified he saw a brick being thrown. Bricks? They're... It was almost like he had a riot. Your honor, there was a mob of 20 people. Did the police officers arrest anybody that were throwing things at his car or anything? Your honor, there were no arrests as a result of this. My client was an arrest record. He broke out the back window too, didn't he? Both front and back. The back window was broken out completely. The front window was smashed but did not completely cave in. But you think it's the only thing that, the only weapons they used were bricks? It's my understanding from the testimony that there was a mob attacking, trying to pull the door, beating on the car, jumping on the car. What was the fight all about? What was this over? Well, that part is disputed. That is disputed. What my client says is that... Looking at it in a light most favorable to your client. I guess that's where we have to take the facts, as Judge Williams said. What are they? In a light most favorable to your client? My client was leaving a party in the town of Seaboard. As he was getting out to his car, there was an argument that some of the, apparently some of the local people, the local crowd, Seaboard crowd, did not like these visitors from Virginia. Were there racial issues? They were pretty much all black, I believe, your honor. Were there racial issues involved? I don't believe that race was... So that's not involved? Yes, this is not a racial issue. Were there women involved? Were there fights over... My client knew one woman from childhood, and I believe... Looking at it in a light most favorable to your client, revealed from this record. That's what I'm talking about. I believe that, yes, that the fact that he knew one of the women there and that he and his friends had danced with some of the local women had upset the local guys. Were people drunk? They'd been drinking, they were having a big party. There was, we believe, that based on the conduct of the mob and the crowd and the throwing of drinks and containers of a client, that, yes, that there was alcohol involved. And there was no sobriety test on... There were two police officers? Yes. And the only person who was treated like a suspect was your client? Yes, your honor, and if I may... What about the people that were throwing the bricks and beating up, tearing up the cars? None of them were ever charged. My understanding is that it was not investigated further according to the testimony of the Chief Reed, and Chief Reed also testified that it's a, he called it a community like a wolf pack where he had two homicides within 36 hours that are unsolved two years later in this small town of 500 people. So he was not confident he'd ever be able to get to the bottom of what was going on. How many officers on the police force? I can't say. I believe it was a handful, probably five or less, probably. You've got three named here. I mean, there's, right? There were two there and then the Chief. The Chief, yes. His name's mentioned here. And just to, I think it's worthwhile quoting Officer Twine, who said that he felt that in order to protect his situation, and he's referring to my client, and to get him out of harm's way, even more so for the fact of saving his life and the victims in the car's life, that he needed to exit that location for his well-being. That's how concerned Officer Twine was. How many people were in the car when the shots were fired? Three. My client and two passengers. One in the front seat and one in the back? Yes. And there is a, in the light most favorable to my client, there was a van nearby. The officer testified that when he shot his gun, it would throw shell casings approximately three to four feet to the side when he shot. He admitted he was close to the van at the time of the shooting because the shell casings were found right behind and right next to the van. There's testimony from our expert, use of force expert, Dave Cloutier, that this situation of him at which he admitted that he was trying to, he was approaching the car and was trying to stop the car on foot, that he created this situation and that he could have stepped behind the van. Now, Officer, Sergeant Phillips testified that the reason why the shell casings were close by, if you try to explain it, was that he shot while he was diving in the direction, away basically in the opposite direction that the car was traveling as he fired. And so he would have been closer to the van when he shot. However, Officer Twine and my client's brother, who was a passenger in the car, said that Officer Twine was in a shooter's crouch, fired directly into the side of the car, and Officer Twine said that... Now, is that the view of the evidence in the light most favorable to your view? Yes. That's the view that you want to take of the evidence? Yes, based on Officer Twine's testimony. So you want Twine's testimony? Yes. And in addition, Officer Twine said, if anything, he was actually hinted leaning slightly away from the van. So there is an issue about that, the physical evidence associated with that. So it seems to me this case really comes down to after he gets in the car, goes to this dead end, doesn't know his way out of town apparently, turns around and is coming back. The officer then, the shooting then happens, words of Judge Niemeyer, quickly in secession. And what we then are dealing with is a question of are there disputed facts that cloud this whole eminence and necessity part? If you took the government's perspective on it or the defendant's perspective on it, oh, he hit him, knocked him down, and he fired his gun instinctively, is there other evidence as to where you have to come from in terms of pointing there's something in dispute? Because if you took that, that seems to be a closed case. But you just pointed to the other officer has indicated certain things. The first question is, is there dispute in terms of the distance that this officer was from the car at the time he fired the shot? Yes, Your Honor. What does the officer say? Where he was. Well, the officer said that he was struck in the knee by the front corner of the car and fired instantaneously into the car. And where is the dispute? And the dispute is that Officer Twine, who saw him shoot, did not see it strike him, but said, well, I mean, it could have, but he didn't see that. But what he did see was... He said it breezed him. It might have breezed him. It might have breezed him.  Use the word breezed. It might have breezed him. It might have breezed him. And he was in a shooter's stance, firing directly into the side. And that's also the position of my client's brother, who saw him shoot into the car. And in addition... That's material because... Well, that's material, Your Honor, because he wasn't in danger at that time when he fired. And it also, there's also a genuine issue. Could he have stepped behind the van? He was close enough to the van. He obviously was not... The facts show that he was not diving as he fired because Officer Twine testified he didn't fall for 30 seconds to a minute after the shooting. Is it undisputed that the car was headed off the road in that direction? So, it's undisputed that the car went slightly off the side of the road. And I will say that Sergeant Phillips... In the direction of the police officer. In the general direction of the officer, that's true. Now, Officer Phillips described it as he started merging his way over towards him. So, Officer Twine... I may understand that point. Undisputed that the car was headed directly. Is it disputed as to whether the officer had an opportunity to take cover at that point? Yes, Your Honor, that's disputed. Where is that disputed? That's disputed based on the physical evidence where the shell casings were found and the officer's own testimony that how far the shell casings flew. And in his record, as he testified, he was a very proficient shooter and shot a lot. And in addition, he admitted he was close to the van but tried to explain it because he dove forward towards the van. What kind of weapon was it? It was a .40 Smith & Wesson. I believe it was a Storm. I believe it was a 6-hour. I can't recall right now. But it was found with, I believe, 12 rounds in it at the time after the shooting. And it's consistent with him double-tapping. There's no dispute. There's two shots fired. One went into the pulmons and fractured it and actually broke into pieces. And the other one is lodged in the door. Yes, and we're not disputing that. Also, when he shot the car, was there any dispute? He knew there were passengers in the car? Oh, there's no dispute about that. He helped put them in the car. He commanded them to leave. Sergeant Phillips was the one commanding them to leave at that time. Does the evidence indicate he's shooting at the driver or he's just shooting the car? He shot into the side of the car, and there was a passenger in the front seat and there was a passenger in the rear seat. He shot through the driver's side door? He shot one shot through the driver's window, and the other shot went into the side of the door. And that's when it lodged in the door? Yes. The one that went through the window is the one that hit him in the arm. And there was some concern and testimony that although there was no people in front of him or the direction it was going, that to the side, that there was a parking lot area off to the side where there may have been people there that were endangered, could have been endangered by those shots as well, too. And there are experts like J.A. Pines on that being a reckless use, which is also barred by the statute. The other thing I was just going to mention is that Twine testified that in terms of the veering, he said from coming back over here, the driver had come back through the straight to go down the street, so he went off a little on this side. That was his description of it. Although the district court said he swore it off the road to Officer Phillips, we don't believe that's what the record evidence actually shows. Why did he get in his car? Was that at the behest of the officer to tell him to get out of here or whatever? Yes, Your Honor. Both officers commanded him to leave. He got in his car and left. He was beaten. He contested he was hit when he was getting into his car. He was beaten getting into his car. A crowd jumped on his car, tried pulling his door open. Officer Sergeant Phillips also agreed with that as well, too. Is it disputed as to the fact when he attempted to leave, he was trying to leave, but he didn't know the area and Seaboard, like many towns, had these little dead-end streets. He goes there and he can't get out, so he has to turn around and come back? That's exactly what happened. Is there any dispute on that? No, there's no dispute. So was there any dispute that he had no, I mean at least, if there was any information he had any intent to hit anyone when he left the place? Or was he trying to get away? So, Your Honor, I think what distinguishes this case from all the other cases is first, I don't believe there's any evidence that he intentionally tried to hit anybody. It's also very disputed if he did hit anybody. In the lightness of my mind, he didn't hit anybody. Well, it's undisputed what the officer saw, and what the officer saw was, number one, he had thought this driver had hit somebody in the parking lot and was trying to stop him, and he had yelled, stop. Now, of course, he didn't know whether the driver could hear it or not, but the driver says he didn't hear it, so we have to credit that. But the fact that whether he hit somebody in the parking lot is disputed because the other officer said he didn't hit anybody in the parking lot. And he was actually very emphatic. He said he would have seen it if it happened, and it didn't happen. He was very emphatic. They were there 180 degrees. But I'm just taking the point of view from the officer standing there, and now the car is coming. He's trying to stop it, and it's coming toward him. He says it's coming off the road toward him where he's standing, and it glanced him, and he fired the shots simultaneously right after that. That's his testimony. And the driver, Lee, says he couldn't see. He doesn't know whether he hit him. And the twine says he really didn't see. He said he could have used the word breeze, I guess, whatever. And so what you really have is an officer has a combined purpose. Number one, he's trying to stop somebody who he believed hit somebody, even though that's a question of fact, of course, because twine says he didn't. But that's what the officer genuinely believed. If he'd hit somebody, he was trying to stop them, probably to question them, to look into that issue. And then the driver, in that mode, the driver is coming at him in the vehicle, and he fires two shots. And the district court found those circumstances sufficiently invoked the protection of the officer under Section 402D. And the question I have is, if that officer's testimony is undisputed from his point of view, isn't he entitled to have fired those shots under that provision? Your Honor, his testimony is disputed by other witnesses there. That's not a question. I don't question it. It is a point of view. That's what it is. Well, first, Your Honor, was he reasonable? His beliefs, were they reasonable? We're saying those beliefs weren't reasonable. They have to have been reasonable. And by the physical facts. I want to give Kevin an understanding. It seems like to me, in a qualified immunity situation, that would be relevant. But in a summary judgment type situation, the line of facts is just laid out. Yes, it could go there. But the question on summary judgment is, in a light most favorable of your class, we don't get into what he said. We get into, except to the extent to see how it is disputed, whether it's reasonable or not is a question, maybe a jury question or whatever. But reasonableness, at least in qualified immunity, is a whole different perspective from the perspective of summary judgment in terms of a substantive case. Under state law, if there's a question of unusual force, which we contend in this case it is, that's supposed to go to a jury. And there are facts that show there was unusual force used in the situation where our client was following the officer's directions to leave the scene. He was being attacked by a mob. The officer knew that. The officer knew his car windshield was damaged. Did you believe the officer's version for the purposes of whether the car hit the other person? Or do you believe the officer that's the defendant would be the defendant here, Phillips? Or do you believe Twine's version, that he didn't hit anybody? Now, if you believe the officer's version, what he did is more likely to be reasonable. But for your purposes, do we believe Twine's version that he didn't hit anybody? And he said he was sure he didn't hit anybody. We believe Twine's version that he didn't hit anybody. You say we do, but under North Carolina law, do you believe the officer's version in order to determine whether he acted reasonably on summary judgment? On summary judgment, I think there is a question of whether or not, was the officer's belief reasonable? Under North Carolina law, we don't believe. Yes. We don't believe the officer. I think that the, I believe if you can show that the officer's belief was unreasonable based on there were disputed issues and facts. But the officer said, I saw him hit somebody as he pulled out. And Twine said he didn't hit anybody as he pulled out. Which version of those facts is correct for the purpose of summary judgment? And I'm sorry. We're going to have to ask the other lawyer, too. I mean, he heard all this. I need to ask you one question before you sit down. Have you got an answer? No, I'm fine. The officer enjoys public office immunity himself. But this is against the town on a respondent superior theory. So that the town is, he's the agent of the town. The town is responsible for his actions in the course of his employment. Is that right? Yes. And so the question I have for you is if the employee or the agent is protected by immunity, is the town denied that protection as the, on the respondent superior? In other words, its liability is derivative through the officer, what the officer did. Your Honor, this is different than normal defenses. This is an immunity defense. Public official immunity is an individual capacity immunity. I understand. We believe that. It belongs just to the officer. Yes. But if the officer is protected by the immunity and you're under a respondent superior theory, does that, there's no liability on the officer. So the question is, is the town liable? Your Honor, plaintiff contends no. And I have the unenviable position of making that argument in front of Judge Wynn. Well, what's the law in North Carolina on that? Well, there are three different lines of decision. It's all the state law cases. The whole thing's a state law case. Yes. We believe all the Supreme Court cases show that, no, they're not entitled to it. And we file some supplemental authority on that. That's unclear to me. I didn't go read each case, but it's a little unclear to me. And we'll hear from your counterpart. But Judge Wynn may be our expert on that in this courtroom. In that situation, I'll just have to say respectfully that in that case, this issue was not properly briefed. I believe Judge Wynn was not well served with it. This issue was not brought forward. Which case are you talking about? This was Turner v. Greenville. All right. And we also cited the City of Dallas case, which clearly comes out and says that they're not entitled, and we think that's consistent with the Supreme Court. Isn't it a strange result to say that the only liability of the town is imputed liability of its agent, but the agent can't be liable, but the town is liable? The agent can't be liable in his individual capacity. However, he can be liable in his official capacity. And as a result of that, that makes the town liable. And that makes the town liable. He's superior under North Carolina law, and is liable up to the extent of the insurance coverage it has? Yes. Or liable to the extent of waiver of it. If he doesn't have any insurance coverage, they're not liable. No, they're liable to the extent of the waiver of governmental immunity or sovereign immunity. Oh, yeah, that's the town's liability. But I'm still concerned about can the town, as a master, master-servant law, can't the town, under general principles of North Carolina law, assert any defense that his agent could have asserted? So not every defense that it can. It cannot assert public official immunity. Well, that's the second question, of course. And you say that even though the officer has the defense, the master, who's responsible for the officer's conduct, can't assert the defense. The master, in this case, is responsible for the official capacity conduct of the officer. And in his official capacity, the officer does not have public official immunity. And that's mirrored in decisions related to the State Tort Claims Act cases in North Carolina, where the defendants are basically the state cannot assert public officer official immunity. All right, we've exhausted you. We'll bring you back up. Mr. Hartzog? Good morning, Your Honors. May it please the Court, Dan Hartzog, Jr., here on behalf of the town of Seaboard. I want to answer one question that you all asked earlier, which is, do you have to take as true, did the officer see somebody get hit? Which officer now? Sergeant Phillips. Phillips, the shooter? Correct, Your Honor. All right. Did someone actually get hit or not? I think the Court can take it as true that someone did not get hit, and the like most favorable for the plaintiff. That's not the question in terms of the liability. We're talking about the person when he pulled away. Correct, Your Honor. We need to take what Twine was right. Nobody was hit. Sergeant Phillips said, I saw somebody get hit. Sergeant Twine says, no, nobody got hit. The Court can take as true that nobody got hit because that's in the like most favorable to the plaintiff. The question, though, is not whether someone got hit. As we pointed out in the brief, the question is, did Sergeant Phillips have a reasonable belief? Would an officer in his position have probable cause to stop the vehicle? And that could be for that reason or for any reason. It's a subjective stance. Would he be entitled to use deadly force in this case under the statute that gives him the opportunity to use deadly force? We're not talking about just a probable cause here. So in this instance, the question is, in addition to there not being a person there, there seems to be a disputed fact of how far he's from this vehicle. And from the plaintiff's perspective, what is that distance? And now you're talking about Sergeant Phillips as the car is coming in his direction. I think that's the issue in the case from my perspective because we're talking about eminence and necessity to be able to fire a vehicle into a car that not only has a driver in it but passengers in it, a car that he directed to leave and the driver complies with it, doesn't know where he's going, he turns around, this mob is all around uncontrolled and moving in this direction. The eminence there seems to be there, but the question is, are there facts from which a reasonable jury could conclude that that need to employ deadly force in compliance with the statute, do they exist? And you could persuade the jury one or the other. The question is, should the judge take it from the jury? And are there enough facts? You've got one officer, which is somewhat rare, actually disputing what the other officers said. You have two officers who are giving different testimonies on what happened. And one says he got down in a stance, the other says he got knocked over. That's a big difference. To get down in a stance, you are not knocked over unless you got up and put yourself in a stance. And the other says he knocked me over. That's huge. And when you get to that level of facts, the question, you can get into the nuances of was it reasonable for him to shoot in. No one's going to say you can shoot in a car, a house, whatever you think is reasonable to do so. The facts have to substantiate your reasonableness, not just from your perspective, but from others going on. The fact that it's all going so quickly, all kinds of minds are being clouded. But we really would like to have the facts as the witnesses present them and give them, and then we give it to the jury, and the jury makes that determination, not a judge on someone's judgment because of the statute he involved. Your Honor, if I can address that, every witness who was there who says they saw it definitively says he got hit. Says who got hit? Sergeant Phillips. Twine doesn't say so. Twine says he may have been breezed by the vehicle, he couldn't say. Breezed means he didn't get hit. Breezed means there's air, and wind. Breeze is a wind. So he was so close that it caused the wind to go over to him. Respectfully. That's what a breeze is, I think. I don't think that's what Officer Twine meant by that. Well, it's what he said. How do you know he meant something different than what he said? Because he was breezed. There's a question of can he get out of the way, or does he just stand there with a deadly weapon and fire into a car with a driver and passengers into it? Your Honor, the evidence is that the officer, Sergeant Phillips, was standing off the side of the road as the car was coming down the road. He positioned himself there. He knew this car was turning around and coming back. He put himself right there on the side of the road. He could have gotten out of the way, at least from a light most favorable to the plane. I'm not saying your version couldn't be believed by a jury, but under these facts and circumstances, particularly when you look at holistically what's going on here, this is a small town. These kind of situations can occur. This mob is uncontrolled, and the officer is not controlling the mob. This individual is trying to get out of town. He is fearing for his life. He made the wrong turn. He turns around to come back, and this mob is all about, and there's an officer. Somewhere in the middle of this thing jumps out and takes, in the light most favorable to the plane, takes a stance with a gun and points it right at that car and fires into it. Your Honor, respectfully, that is not what plaintiff said. I don't know. Your Honor, I would distinguish one thing. Sergeant Phillips was off the side of the road, not in the middle of the road, so you can't really say that he put himself in the position knowing that car was coming. He was off the side of the road, and then the car suddenly veered in his direction. The car is coming at him. The car comes off the road. I mean, you've got a lot of moving parts here. At the end of the day, as I said, I'm not saying your version is not believable. It may be exactly what a jury would go with. The question in this case, this is summary judgment, and summary judgment is a different animal when you get to this level, particularly when you've got a statute involved in dealing with imminence and necessity. Odd cases, I've said, you've got an officer saying something, you believe everything that other officer is saying, that's a different case than this officer who took the action. And, Your Honor, to address that, Officer Twine actually does say he does not dispute that Sergeant Phillips was hit. If you look at his testimony, he says, I don't dispute it. I was at an angle. The car could have breezed him. I can't say. It could have breezed him. Correct, Your Honor, but that was in response to a question of, can you say, did he say he was in a shooter's stance? Well, and Sergeant Phillips testified to that. He was in a shooter's stance aiming at the car as it was coming towards him. And both Officer Twine and the passenger – Well, that's before the car gets to him. He takes a shooter's stance. He doesn't get out of the way. He doesn't put himself on the side of the car, go for cover. Takes a shooter's stance at a car that has a driver and passengers in it where he has to know this driver is only just trying to get away from this mob that the police is not protecting him from. He's not being protected from this mob because I'm not saying they could have, but I'm saying he knows enough. And this man's life is in danger. So he is trying to get out of here, and the officer joins the mob and points a gun at him. Your Honor, he was trying to stop the car. He was ordering the car to stop because he believed that the car had hit somebody. And not only did he believe the car had hit somebody, he knows that he was almost hit by the car earlier. And other people were – it looked like they had been hit by the car. Did he believe someone had hit the driver? Why didn't he stop this mob? This driver had been assaulted and he had been beat up. He's trying to get out of town. Looks like the one that needed protection was the guy trying to get out of town. The mob didn't need protection. They were the problem. If anyone got hit out there, it's because they got themselves out there in a mob trying to stop someone who was trying to get away. And in that instance, you're saying someone who is in the act of doing illegal and criminal acts to another, an officer can take a stance and shoot the person they're doing to it or shoot the car. And there's no disputed fact about that. Well, Your Honor, what I'm saying is that the officer has a right to stop that vehicle. He does. Yes. And that's what he was trying to do. And that's what he was trying to do in terms of what's going on here. But that's not what you have here. It's not just a clear fact that here's a car who's – and Turner, Turner's the case they want to bring up. It's totally factually different what the case to this case. Turner's is not this case. That's a whole – those officers out there for hours. They did everything they could to try to keep Turner from doing what he was doing. And they had – at the end of the day, they just really – under the facts of the case, they just didn't have a choice. That is not what you have here. You've got an exigent circumstance in which an individual is in a place. Officers know it. He is in danger. People kill people for doing what is done here. This man is trying to get out of town. He goes down a wrong street. He turns around. We're passing him. And people come out. And somebody, the officer thinks who's come out, who has no business going there because the officer told him to get off, they continue to bang this car up. Someone, the officer thinks, who is doing this illegal activity gets hurt. So now let me shoot the car. Your Honor, the issue is at the moment force was used, which is what you look at in a shooting like this, you look at the moment force was used, what situation was Sergeant Phillips in. The situation he was in was that a car veered directly off the road right towards him. Now, what happened before with the mob? And no one is saying that there was any information that car did that intentionally. There's nothing here to indicate this driver was trying to hit that officer or do anything. The only information I'm seeing, at least from a disputant perspective, is from the vice president, he's trying to get out of town. And here this mob is keeping him from going out of town. Now you've got an officer keeping him from going out of town. Well, Your Honor, there's no requirement that the officer with a car coming at him has to have some knowledge of what caused the riot. I'm sorry, Your Honor? What caused the riot? The testimony is... On this record, what caused the riot? There was this party and there was some drinking involved and the plaintiffs were from out of town and there was some sort of dispute. I think there was an issue with a plaintiff dancing with a local girl or something like that and one of the locals and the plaintiff got into it outside. The testimony was they were throwing punches at each other. He was hit before he got in his car or things were thrown at him? Not prior to him getting in the car, although the testimony is... Because once he got out, he tried to get something out of his trunk or something. Correct. There was something about that. There was a physical altercation between the plaintiff and one other individual prior to them getting in the car. Prior to him getting in the car, somebody tried to beat him up. And he got in the car and they broke out the front window with bricks and they broke out the back window with bricks and it was knocked completely out. At some point. And two other men got in the car with him. One in the passenger seat and one in the back seat. That was before the car moved. And the two officers were standing there and did nothing. Well, Your Honor, the officers, and I'll dispute the timeline there a little bit because what happened is the officers got the plaintiffs and his friends into the vehicle, backed the crowd up, and told them to leave. Did they arrest anybody that had broken out the car windows? At that point, no car windows had been broken out. When were the car windows broken out? The officers backed up, told them to leave, and then the testimony is some of the locals crowded onto the car and there's a dispute. No one knows exactly how the windows were broken. Well, we can see some of the locals. What happened was a mob. Correct. A local mob. It wasn't one guy. Small towns, I'm one of those myself. I kind of understand how this works. You've got all these local people here who are intertwined, know each other well. One gets involved, it becomes everybody. So whoever that one individual is, he's not even identified. We don't even know who that is. It's everybody. And this man has everybody. He has a mob that is coming after him, and they've just gotten emboldened more from the assault. Beat the car and knocked the windows out. And nowhere, all these criminal acts right in front of those officers, there's nothing to indicate anything is being done even to deter it or to say stop or whatever until you think someone has hit one of those criminals that's in the process of doing this. Now he takes a stance and shoots the car. Your Honor, I disagree with the characterization of criminals because it's not clear. No regard for the passengers who could have been shot in the car. They're not driving the car. No regard for anybody else. There's no indication this guy has started a fight. He would want to fight. He's trying to get out of town at the direction of the officers who didn't lead him out of town, who didn't say, okay, you need to get out of town, follow me, or I'm going to escort you. Well, go this way. Just get out of town. And he turns the wrong way because he doesn't know where he's going, turns around and comes back, and then this. Your Honor, one thing I want to clarify here is that the plaintiff actually did get out of his vehicle after being ordered to get in and went to the trunk, and the officers were concerned that he was going for a weapon because there had been this altercation. And they told him to get back. He did that while he was driving the car? No, before he drove the car, Your Honor. So he didn't get away. He did not because the officer closed the trunk. You're saying the timeline in the parking lot, he comes in, the officer is trying to get him out of there, gets him in the car. He gets in, and instead of leaving in that moment, he stops again. He gets out, goes to his trunk, and, of course, now the crowd is getting worse. The officer says, get out of here, and he's trying to get out, and on the way out, Sergeant Phillips believes he hit a person. Correct, Your Honor. And that changes Sergeant Phillips' attitude at that point. Now that guy is a suspect for having hit somebody. And as he goes, he's trying to stop the car, but that's not an issue in this case, whether he successfully stops or used force. The issue in this case is whether at the time the officer was trying to stop him legitimately, and Lee, we have to acknowledge, didn't know he was trying to stop him. At that point in time, the circumstances are that the car is coming at the officer, and we've always held that an officer can protect himself with his weapon in that circumstance. And it's this notion that everybody testifies he was hit. The officer testifies he was hit. Twine doesn't say he can say one way. He said, I didn't see it from my angle. And the only question is the shooting stance, and both officers say he was in a shooting stance. So that's not even disputed. Really, the question comes down to, which Judge Dever addressed, is whether the officer was in a position that he could protect himself. And that's really that instant, not the rest of the crowd and all the rest of the facts. It's an unfortunate circumstance. And as Judge Winn points out, the crowd was probably out of control, and the officer recognized he couldn't control the mob. They didn't have enough officers. Just get out of here. But this incident happens as a reversal of roles when the officer is being threatened by a vehicle coming directly at him. That's correct, Your Honor. You see, it goes even deeper, because these are not just persons who are standing out there. These are criminals. And the question then becomes, you have criminal activity that is very clearly being committed against one individual, and that individual is trying his best to run away from the scene. You change the scenario of this, he doesn't have to be in a car. He could be running from the scene, trying to get away, and somehow the officer, he may have a stick in his hand or whatever, and the officer thinks he's getting ready to hit and shoot him who's trying to run to get away. And then he hits one of the criminals. Let's call these people what they are. They are not just people out there around the car. They are not only criminals, but they are still actively engaging in criminal activity with an intent that's obvious to harm this individual. And one of them gets hit because they got out there. They put themselves out there. The officer knows it. The only reason he got hit is because he went out there trying to beat this man up and do whatever. He doesn't know how he got hit if one of them did. And he takes a stance and shoots into the car. Your Honor, respectfully, it is still illegal to try to hit a criminal with your car. And that's the situation. I absolutely believe it, but I also believe there's a jury question that can be presented here. And you could argue this very forcefully before a jury, and they could come out and believe every word of this or they could believe the other side. But I don't think a judge should take this question from the jury. Your Honor, to that point, every single person who says they can say definitively whether he got hit or not says he got hit. The only people who say, I didn't see it, are Officer Twine, who says, I don't dispute it. He was asked specifically, can you say whether he got hit? He says, I don't dispute it. Was that the breeze language? That's the breeze language. But, Your Honor, I think what he means is there's something in between. Well, respectfully, I don't think that's what he was saying because if you read the transcript, what he was asked was, do you dispute that Sergeant Phillips got hit by the car? And his answer is, I don't dispute it. So he does not dispute. He said, I couldn't really see. I was at an angle. Breeze could also mean just brushed. And I think that's the sense in which he meant. How wide is this road? I'm sorry? How wide is this road? Is it a standard road or is it a dirt road? It's a dirt road. A dirt road. Correct. So there's no markings in terms of which side to be on or anything on this. I'm thinking of it. If we're looking at a regular road, that's one thing. I know what these little country roads look like. Who knows where you're supposed to be on them? Potholes and everything else are probably on this road, and I'm sure these facts come out. And all of this sounds like, well, he's standing there on the road and he comes off the road. On a dirt road, there's no honing off. You're just out there on the road. You're just driving on it. There's nothing in the record that says that the side of the road was not clearly marked. It was a grass area. He was standing in the grass. And it's very clear from the record that he was standing off the road and that the car swerved off the road. You've got to be local and you've got to be there and live there to know that. This is at night. I don't know when he got there or whatever. Nothing saying he's ever even been there before. This is at night. He's on a dirt road beside an old club that's out there in the middle with a bunch of mob people who are drunken and riotous and committing all kinds of assaults and heinous things against this individual. He's doing his best to try to get out of town. The officer told him to get out of town. He complied to do it and just sent him to get out of town. He goes the wrong way. They come back. He takes a stance and shoots him to the car. Because in the middle of that, circumstances changed. After he told him to leave town. He hit one of these criminals that went out there with the beat-up on his car. Correct. And he's almost hit him. And he's driving recklessly with a windshield. The plaintiff admits, I couldn't see in front of me. I couldn't see where I was going. He stops the car. He revs the engine. It kicks dirt up. It goes directly towards Sergeant Phillips. Veers off the road in his direction. That's why Sergeant Phillips took the shot. Because the car was coming directly towards him. There's no question that the car was driving recklessly. The windshield was entirely broken. The plaintiff testified, I could not see where I was going. It was broken by those criminals. Correct, Your Honor. It was still broken. It could have been broken by one of those ones that jumped out there in front of whatever got hit. They break his windshield, cause him to have to, in the movement of this car, who knows if he can stop it or not. And the officer sees all this. He's not made one. I've heard one word about someone's making a rest or someone's doing anything to get this crowd off this individual. Whether he can do it or not is another question. I've heard one word about that. It is in the record, Your Honor, that they tried to get the crowd off the car. All right. I think we've completely exhausted that subject from you. And let's get Mr. Doggett up for his rebuttal. Your Honor, if I may, I wanted to add one thing on public official immunity. Because I do think that's an issue in this case that needs to be addressed. The appellant has cited three Supreme Court cases, none of which really control. The most recent Supreme Court of Appeals case on this is the Turner case, which said that the municipality is entitled to use the defense of public official immunity where there is a respondee at superior liability. The plaintiff has cited a couple of cases. Well, that would be consistent with the common law. The common law is the master can assert any defense that the agent had. That's correct, Your Honor, and that's the law in North Carolina. The plaintiff has cited three cases by the North Carolina Supreme Court that he contends take precedent over the direct decision of the Court of Appeals, one of which is Moore v. City of Creedmoor. In that situation, there was direct negligence on behalf of the town, and the court said you can't have public official immunity asserted by the town where there was direct evidence of negligence by the town. In that case, they were trying to close down a business, and the board voted to have the police chief go out there and shut down the business, and that was the issue. So in that case, there was direct action by the municipality, and public official immunity didn't apply. It was not a respondeat superior claim. And the next case is Meyer, which did not address it at all, did not address public official immunity in the context of respondeat superior. And then the third case he cites is Mullis v. Seacrest, which specifically declined to reach that issue. They said we did not reach the issue of whether public official immunity applies in this situation. So the North Carolina Supreme Court has not weighed in on that. The Court of Appeals has very directly and specifically weighed in on that and said yes, the municipality gets respondeat superior claim, they get to assert public official immunity. That's the whole theory of respondeat superior is that the master didn't do a thing, but he's imputed with the liability of the servant, and the servant's liability is subject to the defense. All right, thank you. Mr. Dart? Your Honor, if I may just quickly make one point, and that is when Sergeant Phillips testified that he made the decision to arrest the plaintiff when he pulled out of the parking lot. And then he testified he joined the mob and tried to pull some people off the car as it drove, and then he gave up on that, and the car had to drive around and go turn around and come back. And during that time period, he had decided he was going to stop the car. All that addresses is the justified reason for Phillips standing on the side of the road. The issue in this case doesn't focus on whether he was justified in being on the side of the road there trying to stop him. The issue in this case is in that posture when he's standing there trying to stop him, the car veers off the road and comes at him. Regardless of what the intent was, whether it's an accident, and the question is whether an officer seeing a vehicle come at him, threatening his life, driving recklessly, spinning his tires, whether he can defend himself with a firing shot. And the question is, did he get hit? And I seem to recall that Officer Twine did exactly as represented by your colleague, is that he said, I could not see one way or the other. And all the evidence uniformly said he got hit. Now, an officer doesn't even have to get hit to fire his gun in that circumstance. But in this case, he got hit, and it seemed to me that's the narrow focus. All this context are not justifications for, or don't bear on whether an officer can fire a gun when an automobile is coming at him. Your Honor, what does matter is that he went and intentionally put himself in harm's way. He made that decision and stood in the center of the road. He testified because he wasn't in the center of the road, he was on the side of the road. No, Your Honor, he testified that after he saw the car went, he decided he was going to pull it. He walked into the center of the road, stood there, and then he started stepping back and stepping back and stepping back, and he got closer, and he got to the side of the road. Well, that's even more damning to your client. Because now he's off the road in the grass, and the car is coming off the road at him. Your Honor, he had plenty of time to get cover. There was a van right there, and that's disputed with the physical evidence. Was he trying to protect himself, or was he trying to arrest the driver? He said he was trying to arrest the driver. Now, his approach, again, this is a negligence case. He said he decided he was going to arrest the driver. He said he decided he was going to arrest the driver when it pulled out of the parking lot. Because he thought it was mine. He told him to leave town. Yes. So, and then, but after he told him to leave town, and then he started to leave town, he decided he was going to arrest him. And that he was willing to shoot him to do that. So he shot him in connection with an effort to arrest him. Yeah. Is that what you're saying? Yes. He drew his weapon. Was that in the light of what was favorable to you or to your client? Well, we contend that his belief that he had the right to arrest him was unreasonable. Pardon? We contend that his belief that he could arrest him was unreasonable. However, he said he had decided that he was going to do it at that point. Now, my clients can't testify to this because they didn't see him. But he testified that he went out and stood in the middle of the road with his gun drawn. His police car was right there. I understand all that. I'm asking about if he was trying to shoot him. If he shot him to keep from getting run over, was he trying to do that? Or was he shooting at him to try to apprehend him? Well, Your Honor, he drew his weapon and had it pointed at the car long before he shot it. He also had a flashlight in him. He didn't do anything to signal my client. There is, in all the other case law, when people are fleeing, they know an officer is trying to arrest them. They had committed an armed robbery. They knew they did something wrong. They knew that they were disobeying the police, and they got shot because of that. And that was deemed to be reasonable. Here the last thing he'd heard from the police was to get out of town. To leave. And Sergeant Phillips knew that they couldn't see him. He knew there was a crowd. The crowd, by the way, was chanting and yelling to shoot him. Take him out. Take him out. All that whole time. So it was a mob, and they were trying to get the officer to shoot him. And he did. And we contend that, again, this is not a qualified immunity. This is not a public official officer immunity. We're saying that this is a negligence case. He was negligent in determining that he had that right to do it and in shooting him. He shouldn't have done that. They waived immunity to the extent of it. And Judge Wynn, just to be clear, with respect to Turner v. Greenville, the only issue with that decision I have is that I think the decision was absolutely right. It's just the one little bit where it talks about that the city is entitled to public official immunity. Well, what's wrong with that? I mean, isn't that the law? Well, Your Honor, we contend no. And in the Thompson v. Town of Dallas, it quotes, it says that the public official's immunity serves to protect the official from individual liability for mere negligence. Thus, while Officer Howell is protected from individual liability for mere negligence in the performance of his duty, such immunity does not extend to protect him for suit in his official capacity. And, again, there are two different legal entities. As an individual, public official immunity does provide him immunity. I understand, but that is we are in a respondeat superior. And if I could just – Just a minute, sir. The respondeat superior idea is an interesting idea. It goes back to the old common law where the master is without conduct at all. He's responsible for the truck driver's negligent driving. And, of course, the master is sitting back in the office. And so he hires somebody, and he's responsible for that. And to the extent he's responsible for somebody's conduct, regardless of his own, under respondeat superior, he gets all the defenses. He's responsible for their conduct within the course and scope of their employment, not for intentional torts in many cases, et cetera. I thought you said it was a negligence case. This is. I'm talking about the respondeat superior doctrine, I'm saying. And in this case, if I can continue the quote from this Court of Appeals case, it says, defendant town is waived immunity by the purchase of liability insurance. According, we hold that to the extent defendant town of Dallas is waived its immunity, that the town and defendant Howell is sued in its official capacity are not immune from suit for Howell's alleged negligent acts. Well, that doesn't address the issue. All right. We've heard from both of you on that. We'll come down to Greek Council and take a short recess.
judges: Paul V. Niemeyer, Robert B. King, James A. Wynn Jr.